NORTH CAROLINA CONSUMERS POWER, INC. AND THE CITY OF SHELBY, A MUNICIPAL CORPORATION OF THE STATE OF NORTH CAROLINA, PETITIONERS-PLAINTIFFS v. DUKE POWER COMPANY; ROBERT W. YELTON, N. DIXON LACKEY, JR., GEORGE C. NEWMAN AND EARL D. HUNNEYCUTT, JR., INDIVIDUALLY AND AS CITIZENS, ELECTRIC CUSTOMERS AND TAXPAYERS OF THE CITY OF SHELBY, NORTH CAROLINA; RESPONDENTS-DEFENDANTS

— AND —

CHARLES R. McBRAYER; ALI PAKSOY; VARIETY THEATRES, INC., DOING BUSINESS AS SKYVIEW DRIVE IN THEATRE; BELK BROTHERS COMPANY; BURLINGTON INDUSTRIES, INC.; FIBER INDUSTRIES, INC.; CITY OF WILSON; CITY OF GASTONIA; TOWN OF CORNELIUS; CITY OF CHARLOTTE; AND ATTORNEY GENERAL OF NORTH CAROLINA; ADDITIONAL RESPONDENTS-DEFENDANTS

No. 7327SC747

(Filed 17 April 1974)

Declaratory Judgment Act § 1— validity of contract — lack of justiciable controversy

No justiciable controversy was presented in an action brought by North Carolina Consumers Power, Inc. and a city against Duke Power Company and citizens, electric customers and taxpayers of the city to obtain a declaratory judgment as to the validity of a "System Development and Power Sales Contract" entered between the two plaintiffs.

Judge VAUGHN dissents.

APPEAL by defendant, Duke Power Company, (Duke) from an order of *Friday, Superior Court Judge,* dated 30 May 1973,

and filed 1 June 1973, denying a motion to dismiss a purported cause of action.

Argued in the Court of Appeals 31 October 1973.

This was an action for a declaratory judgment based upon a petition and complaint reading as follows:

### "PARTIES

1) North Carolina Consumers Power, Inc. (Consumers Power) is a nonprofit corporation organized under Chapter 55-A of the General Statutes of North Carolina, with principal offices in Raleigh, North Carolina.

2) The City of Shelby, North Carolina (Shelby), is a North Carolina municipal corporation, and, pursuant to the powers granted it in its Charter and Chapter 160 (160A) of the General Statutes of North Carolina, owns and operates an electric distribution system.

3) Duke Power Company (Duke) is a North Carolina corporation with its principal offices in Charlotte, North Carolina. It is a public utility and engages in the electric generation, transmission and distribution business in North Carolina and South Carolina. Duke, because it now supplies Shelby electric power and energy at wholesale and because it resists and will resist Consumers Power's effort to supplant it as Shelby's bulk electric power supplier, is a party in interest herein. Additionally, Duke is a taxpayer of Shelby.

4) Messrs. Yelton, Lackey, Newman and Hunneycutt are citizens, electric customers and taxpayers of Shelby, and are, as well as Duke, representative of the class of electric customers and taxpayers named as respondents defendants herein pursuant to Rule 23 of the North Carolina Rules of Civil Procedure.

### JURISDICTION

5) This action is brought under the North Carolina Uniform Declaratory Judgment Act, North Carolina General Statutes 1-253 through 1-267, and, as a Class Action, under Rule 23 of the North Carolina Rules of Civil Procedure.

## SHELBY'S ELECTRIC SYSTEM

6) Shelby owns and operates an electric distribution system. The Board of Aldermen of Shelby is charged with the continuing responsibility to seek and obtain for Shelby a source of dependable electric bulk power supply.

7) Now and for many years, Shelby purchases and has purchased all its electric bulk power requirements from Duke.

## CONSUMERS POWER

8) Consumers Power was organized—

a) to seek and receive governmental approvals for, and proceed with the design, financing, construction and acquisition of, electric generation and tranmission facilities; and

b) to own and operate such facilities and provide power and energy to municipalities owning and operating electric distribution systems and, incidentally, to other electric systems, so as to take advantage of economies of scale in the generation and transmission of electric power and energy.

9) Copies of the Articles of Incorporation and By-laws of Consumers Power are attached hereto as Exhibits A and B, respectively.

10) Consumers Power has tendered to Shelby a duly approved, authorized and executed System Development and Power Sales Contract and related Agreement, together with the form of the related Bond and Note Indentures, (hereinafter, collectively, referred to as the 'System Contract'), attached hereto as Exhibits C-1, C-2, C-3 and C-4. This System Contract has been tendered to forty-five North Carolina municipalities and, subject to appropriate (nonsubstantive) modification, to North Carolina Electric Membership Corporation (N.C. EMC). A certified copy of the resolution by the Board of Directors of Consumers Power approving and authorizing the System Contract and directing its tendering to such parties is attached as Exhibit D.

11) Shelby, by resolution of its Board of Aldermen, attached hereto as Exhibit E, has approved and directed the

execution and delivery of the System Contract, and the same has been duly executed and delivered by the parties thereto.

12) By the resolution attached hereto as Exhibit F, Shelby has authorized and directed the commencement of this proceeding.

## DUKE'S OPPOSITION

13) The facilities which Consumers Power intends to finance, construct and operate pursuant to the System Contract would furnish to systems which are now captive wholesale customers of, among several power companies, Duke, a competing source of electric bulk power supply. Duke has recognized this threat of competition and, in formal filings with agencies of the United States and otherwise, has committed itself to oppose through litigation and otherwise the construction and operation of any such competing facilities. Such commitment was contained in 1) Duke's petition to intervene (Exhibit G) in Federal Power Commission (FPC) Project No. 2700 (as hereinafter explained), 2) a number of formal prospectuses filed with the United States Securities and Exchange Commission in connection with issuance of securities by Duke (Exhibit H being an excerpt from one such prospectus), and 3) a letter from Duke to its shareholders (Exhibit I).

14) EPIC, Inc. (EPIC) is a nonprofit corporation whose studies and activities led to the incorporation of Consumers Power. EPIC, as substituted applicant in lieu of original applicants City of Statesville and N. C. EMC, applied to the FPC for, and was granted, a preliminary permit for authority and preference to study a site for construction of a hydroelectric pumped storage project on the Green River in Polk County, North Carolina, all of such studies leading up to application for license to construct and operate such hydroelectric project. Thereafter, Duke purchased and acquired lands which are situated approximately on the site of one of the proposed impoundments of the project. EPIC, in due time and with approval of the FPC, will assign all its rights and obligations associated with said project and permit to Consumers Power.

15) As incidents to granting of such preliminary permit, the FPC required that EPIC commit to compliance

with thirteen specific conditions, all of which are recited in the order and attachment incorporated therein by reference (FPC Form P-1) attached hereto as Exhibit J.

16) Respondent Duke has intervened in this FPC proceeding and has challenged EPIC's right to establish itself as a supplier of power to the contracting municipalities and electric membership corporations which are or may become signatories to the System Contract. Also, in opposing the organization of EPIC, Duke posed several 'legal hurdles faced by EPIC,' such as contained in a written presentation by Duke to the City of High Point (attached as Exhibit K). Duke's objections and contentions are also applicable to Consumers Power. The essence of Duke's main contention is that North Carolina municipal corporations may not legally enter into contracts such as the System Contract.

17) As the FPC has granted to EPIC the requested preliminary permit, consideration of the objections raised by Duke has been postponed by FPC for action at the time FPC has before it a final application for a license to Consumers Power to construct and operate the said hydroelectric project. Consideration of these issues is then inevitable, as Section 9(b) of the Federal Power Act (16 USC 802 [b]) and the FPC's regulation thereunder, especially 18 CFR Sec 4.41, require that any applicant for license demonstrate its capacity, under State law, to construct and operate the project consistent with the terms of the license.

18) Duke, in its initial petition to intervene before FPC, which is attached hereto as Exhibit G, made the following representation:

'It will oppose the construction of any generating and tranmission facilities by Applicants and Electric-Cities in any application filed with Federal or State regulatory authorities for authority to construct same. . . .'

19) These issues and this controversy between Consumers Power and Shelby, on one hand, and Duke, on the other, must be decided and resolved in this proceeding or, inevitably and unavoidably, they will be the subject of fur-

ther and more expensive litigation between and among the same parties.

20) Inevitably, petitioners plaintiffs and Duke must litigate the validity of the contractual arrangements which support the Consumers Power effort and the authority of Consumers Power to construct, finance and operate electric generation and transmission facilities, subject to such regulatory control as is applicable under the laws of North Carolina and of the United States. Such questions should not be litigated in the forums of State and Federal administrative agencies, but should be decided by the courts of North Carolina, the only courts of competent jurisdiction to render decisions as to North Carolina law which will firmly and finally bind all interested parties.

21) Shelby has now so committed itself that any citizen, electric ratepayer, taxpayer or other person with proper standing can presently file a civil action challenging it. This is a matter thoroughly affected with the public interest. The interests of all such persons and of the public will be served by decision on this matter at a time of minimum risk to the thousands of electric ratepayers of Shelby and the hundreds of thousands of electric ratepayers of other municipalities which may enter into similar contracts with Consumers Power.

## REPRESENTATION OF THE CLASS

22) Petitioner plaintiff Consumers Power stands ready and able, subject to the court's approval, to pay the fees and expenses of counsel for the respondents defendants Robert W. Yelton, N. Dixon Lackey, Jr., George C. Newman and Earl D. Hunneycutt, Jr., and any *guardian ad litem* appointed by the court to assure adequate representation of the class herein, and in such amounts as the court approves.

## PRAYER

WHEREFORE, petitioners plaintiffs pray that the court:

1) Declare this a Class Action pursuant to Rule 23, further declare that Shelby's citizens, electric customers and taxpayers constitute a sufficient and proper class defendant herein, and further declare that de-

fendants Yelton, Lackey, Newman, Hunneycutt and Duke (in addition to its being a party in interest otherwise) are such representative defendants as to fairly ensure the adequate representation of all members of the class;

2) Prescribe such method of notice as may be proper to afford to other members of the class notice of and opportunity to participate in this proceeding;

3) Make such provision, if the court deems such necessary, as may be proper for the further representation of the class, including members of the class who are absent or otherwise under disability;

4) Declare that:

a) Consumers Power is a duly organized and existing nonprofit corporation under the laws of the State of North Carolina; it has full legal power and authority to enter into the System Contract and to undertake and to perform all of its obligations thereunder; all of the undertakings, obligations and covenants of Consumers Power prescribed therein are valid and binding upon Consumers Power and are enforceable against it in accordance with their terms; and Consumers Power has duly approved, executed and delivered the System Contract;

b) Shelby is a duly organized and existing municipal corporation under the laws of the State of North Carolina; it has full legal power and authority to enter into the System Contract and to undertake and to perform all of its obligations and thereunder; all of the undertakings, obligations and covenants of Shelby prescribed therein are valid and binding upon Shelby and are enforceable against it in accordance with their terms; and Shelby has duly approved, executed and delivered the System Contract;

c) Specifically, that the answer to each of the following questions is 'No':

i. Do the provisions of the System Contract unconditionally requiring payments to Consumers Power by Shelby, including whether or not the

Initial System is completed, operable or operating and notwithstanding the suspension, interruption, interference, reduction or curtailment of the Initial System Capability, and not conditioned upon the performance or non-performance of Consumers Power, exceed Shelby's authority under North Carolina General Statute 160A-322, which empowers municipalities to contract for up to thirty years for the supply of electric power, or create a debt of Shelby in violation of Article V, Section 4, of the Constitution of North Carolina, as presently effective or as effective as of July 1, 1973?

ii. Has Shelby, by contracting for System Development Services for a period of several years prior to the beginning of the sale and purchase of electric power supply for a thirty-year period which begins in the future, commencing in all events no later than 1 July, 1984, exceeded the term for which it can legally contract for the supply of electric power?

iii. Is Shelby attempting illegally to exercise, jointly with other municipalities and others, powers the joint exercise of which is not authorized by law, including Article 20, Chapter 160-A, of the General Statutes of North Carolina?

iv. Do the aforementioned (i. above) unconditional payment provisions of the System Contract, or the provisions of Section 6.03 of the System Contract providing for the increase of a Participant's Share (and corresponding obligations) up to a maximum of twenty-five percent of the Participant's decimal fraction (as specified in Exhibit A of the System Contract) upon default of other Participant(s), or the uniform rate schedule specified in Article V of the System Contract, result in a loan of credit or guarantee of the obligations of another by Shelby?

v. Are the obligations of Consumers Power during the System Development period indefinite or wanting in certainty so as to cause the Sys-

Heath v. Mosley

tem Contract, or any part thereof, to fail for indefiniteness or uncertainty?

5) Grant to petitioners plaintiffs all other necessary or appropriate relief."

Judge Friday held that at this stage in the controversy the petition should not be dismissed but that the entire cause should be set down for a hearing on the merits.

From this order setting the case down for hearing on its merits, Duke appealed.

*Crisp & Bolch by William T. Crisp; Tally & Tally by J. O. Tally; and Wood, Dawson, Love & Sabatine for plaintiff appellees.*

*Joyner & Howison by R. C. Howison, Jr.; Horn, West, Horn & Wray; Fleming, Robinson & Bradshaw by Robert W. Bradshaw, Jr.; and William I. Ward, Jr., for defendant appellant, Duke Power Company.*

CAMPBELL, Judge.

We are of the opinion that this entire project presently is too ephemeral and that the interest of Shelby is too infinitesimal for the Court to take jurisdiction. In other words, the case does not present a justiciable matter.

Reversed.

Judge HEDRICK concurs.

Judge VAUGHN dissents.